**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO.  2:21-CV-00246-JRG |
| PNC BANK N.A., | § § | CIVIL ACTION NO. 2:22-CV-00193-JRG |
| *Defendant.* | § § § | |

## <u>ORDER ON PRETRIAL MOTIONS AND MOTIONS *IN LIMINE*</u>

The Court held a Pretrial Conference in the above-captioned matter on Monday, August 15, 2022 and Tuesday, August 16, 2022 regarding pending pretrial motions and motions *in limine* ("MILs") filed by Plaintiff United Services Automobile Association ("Plaintiff" or "USAA") and Defendant PNC Bank N.A. ("Defendant" or "PNC"). (Dkt. Nos. 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 120, 224, 225, 235, 281, 293; *see also* Case No. 2:20-cv-319, Dkt. Nos. 306, 308, 309, 313, 315, 324.) This Order memorializes the Court's rulings on the aforementioned pretrial motions and MILs as announced into the record, including additional instructions that were given to the Parties. Although this Order summarizes the Court's rulings as announced into the record during the pretrial hearing, this Order in no way limits or constrains such rulings from the bench. Accordingly, it is hereby **ORDERED** as follows:

## <u>PRETRIAL MOTIONS</u>

1.    **Defendant's Motion for Summary Judgment of Lack of Patent Eligibility Under 35 U.S.C. § 101 Regarding the Asserted Patents (Dkt. No. 105)**

The motion was **DENIED**. (Dkt. No. 334 at 17:21–32:18.) The Court found that the Plaintiff's asserted patents are not directed to an abstract concept and therefore that the asserted

patents are eligible under 35 U.S.C. § 101 at *Alice* step 1. *See generally Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

**2.     Plaintiff's Motion for Summary Judgment Dismissing PNC's Patent-Eligibility Defenses (Dkt. No. 106)**

The motion was **GRANTED**. (Dkt. No. 334 at 17:21–32:18.) The Court found that the Plaintiff's asserted patents are not directed to an abstract concept and therefore that the asserted patents are eligible under 35 U.S.C. § 101 at *Alice* step 1. *See generally Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

**3.     Plaintiff's Motion for Summary Judgment that PNC is Precluded from Raising Certain Invalidity Arguments (Dkt. No. 116)**

The motion was carried after argument and until the entry of final judgment in *United Services Automobile Association v. PNC Bank, N.A.*, Case No. 2:20-cv-319 (the "-319 case"). (Dkt. No. 334 at 32:19–33:19.) PNC conceded that once final judgment was entered in the -319 case, it did not "dispute that [certain invalidity arguments were] actually litigated in the prior case" and stated that PNC will not seek to "relitigate that issue here." (*Id.*) Final judgment was entered in the -319 case on August 19, 2022. (*See* -319 case at Dkt. No. 745.) Accordingly, Plaintiff's Motion for Summary Judgment that PNC is Precluded from Raising Certain Invalidity Arguments (Dkt. No. 116) is **GRANTED**.

**4.     Plaintiff's Motion for Partial Summary Judgment of No Anticipation or Obviousness Based on Unasserted References (Dkt. No. 117)**

The motion was **DENIED**. (Dkt. No. 334 at 34:21–39:12.) The Court noted that expert witness testimony is confined to the parameters of their expert reports. The Court found that an entry of summary judgment on invalidity issues would be improper in this instance in light of competing expert testimony.

2

5. **Plaintiff's Motion for Partial Summary Judgment that PNC is Precluded from Raising Invalidity Grounds That It Could Have Raised Before the PTAB (Dkt. No. 115)**

The motion was **DENIED**. (Dkt. No. 334 at 39:13–46:25.) The parties confirmed on the record that the Garcia-Verdugo, Byrne, Maloney, and Gustin combination is no longer at issue with respect to the '598 patent, Gustin is no longer at issue with respect to the '136 patent, and Garcia-Verdugo alone or in combination with Acharya, Pintsov, Gustin, or Maloney is no longer at issue with respect to the '136 patent. The parties further confirmed on the record that the SourceNDP reference is no longer at issue in the case. Accordingly, the motion was **DENIED AS MOOT** as to the above-recited grounds. Regarding VECTOR and LG VX9800, the Court found that those references were system art and that questions of fact exist as to whether those systems are entirely cumulative of the printed publications presented to the Patent Trial and Appeal Board ("PTAB"). The motion was therefore **DENIED** as to VECTOR and LG VX9800. The Court also **DENIED** the motion as to the arguments regarding 35 U.S.C. § 112, which could not have been raised before the PTAB.

6. **Defendant's Motion for Summary Judgment of Lack of Enablement Under 35 U.S.C. § 112(1) (Dkt. No. 100)**

The motion was carried after argument and until the entry of final judgment in the -319 case. (Dkt. No. 334 at 47:1–19.) Final judgment was entered in the -319 case on August 19, 2022. (*See* -319 case at Dkt. No. 745.) Accordingly, Defendant's Motion for Summary Judgment of Lack of Enablement Under 35 U.S.C. § 112(1) (Dkt. No. 100) is **DENIED AS MOOT**.

7. **Defendant's Motion for Summary Judgment of No Infringement Under Doctrine of Equivalents (Dkt. No. 104)**

The motion was **DENIED**. (Dkt. No. 334 at 47:20–72:16.) The Court noted that experts are examined through the *Daubert* process, and that expert testimony is circumscribed by the final expert reports. Therefore, summary judgment was not appropriate to resolve the issues presented

in the motion in light of conflicting expert testimony.

8.    **Plaintiff's Motion for Partial Summary Judgment of No Prosecution History Estoppel (Dkt. No. 120)**

The motion was **DENIED**. (Dkt. No. 334 at 47:20–72:16.) The Court found that Plaintiff did not meet its burden to show that no material question of fact exists as to prosecution history estoppel. The Court clarified that the denial of this motion is not an affirmative finding that prosecution history estoppel exists, but is merely a finding that summary judgment is not proper in this instance.

9.    **Plaintiff's Motion for Summary Judgment of No Infringement Under Doctrine of Equivalents (Dkt. No. 324, -319 case)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 334 at 72:24–80:7.) The parties agreed that the portion of the motion related to doctrine of equivalents should be granted because PNC's expert did not offer opinions on infringement under the doctrine of equivalents for the '788 and '786 patents. Accordingly, the motion for summary judgment of no infringement under the doctrine of equivalents as to the '788 and '786 patents was **GRANTED**. The motion was **DENIED** as to literal infringement of claims 1, 2, and 5 of the '786 patent, and in all other respects.

10.   **Defendant's Motion to Strike the Expert Report of Thomas Conte (Dkt. No. 101)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 334 at 80:8–90:20.) As to the paragraphs in Dr. Conte's report that recite infringement literally "and/or under the doctrine of equivalents," the motion was **GRANTED** and that language was stricken from paragraphs 209, 218, 219, 227, 228, 232, 233, 237, 238, 242, 243, 247, 248, 252, 253, 264, 265, 271, 297, 315, 319, 321, 330, 331, 334, 337, 345, 347, 349, 354, 356, 358, 360, 365, 372, 374, 379, 381, 383, 385, 387, 388, 403, 404, 414, 418–419, 424–426, 436–437, 443–444, 450, 459, 461–476, 478, 480, 482–485, 487, 489–491, 493–498, 500, 502, 504–506, 508, 523–524,

526, 529, 530–536, 538–542, 544, 546, 549–553, 557–558, 562–563, 567–569, 572–582, 584–585, 588–591, 596–597, 612–627, 631–632, 638, and 643–645. The balance of the motion, including the portions related to 4.20.1, USAA's mobile deposit app, autocapture, and inventor testimony, was **DENIED**. The Court found that those topics are best addressed via robust cross-examination. The Court also ordered that USAA approach the bench and obtain leave before discussing USAA's mobile deposit app in the presence of the jury.

11.  **Plaintiff's Motion to Strike Opening Expert Report of David Peterson (Dkt. No. 308, -319 case)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 334 at 90:21–102:4.) The motion was **GRANTED** as to paragraphs 96 and 97, which were stricken. The Court found that there was no fair notice of the arguments in the above-recited paragraphs from the contentions. The balance of the motion was **DENIED**.

12.  **Defendant's Motion for Leave to Supplement the Expert Reports of Stephen Gray, David Peterson, and Julie Davis (Dkt. No. 235)**

The motion was **DENIED**. (Dkt. No. 334 at 103:12–118:16.) The Court found that the supplements were not timely. The Court further found that the proposed supplemental reports did not add discussion of any information that was not available to Defendant at the time of opening or rebuttal reports.

13.  **Plaintiff's Motion to Strike Expert Report of Stephen Gray (Dkt. No. 110)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 334 at 118:17–145:20.) The motion was **DENIED** as to the discussion of USAA's products in paragraphs 310–311. The Court clarified that direct comparisons of USAA's product with PNC's product will not be permitted, and should not be raised, without prior leave of the Court. The motion was **DENIED** as to the discussion of a "single processor" in paragraphs 200–222. The motion was **DENIED** as to the discussion of "multiple processors" in paragraphs 232, 234, and 238. The

motion was **DENIED** as to the discussion of a "check amount indication" in paragraph 217. The motion was **DENIED** as to the discussion of "signature identification" in paragraph 239. The Court found that these issues are properly addressed through robust cross-examination. The motion was **DENIED** as to the discussion of "transmitting and submitting" in paragraphs 264–269. The Court clarified that no expert testimony will be permitted that opines on a required order of steps where the Court did not impose such an order during claim construction. The motion was **DENIED** as to the discussion of prosecution history estoppel in paragraphs 249, 276, 335, and 341. The Court clarified that neither party shall raise prosecution history estoppel before the jury. The motion was **GRANTED** as to the discussion of prior art irrelevant to infringement in paragraph 326. The Court found that this paragraph goes beyond mere background. The motion was **GRANTED** as to the discussion of alleged prior art and/or state of the art in paragraphs 91, 93, and 96. The Court found that it would be confusing to the jury to present prior art that post-dates the patents. The motion was **GRANTED** as to the discussion of duplicate detection in paragraphs 338–341. The motion was **DENIED** as to the discussion of "electronic indication of value" in paragraph 327. The motion was **DENIED** as to the discussion of non-infringing alternatives in paragraphs 371–382. The motion was **DENIED** as to the discussion of fingerprint authentication in paragraphs 296–298, 306, and 377–378. The motion was **DENIED** as to the discussion of wireless transmission in paragraphs 258–263. The Court found that these issues are properly addressed through robust cross-examination.

14. **Plaintiff's Motion to Strike Supplemental Expert Report of Stephen Gray (Dkt. No. 111)**

The motion was **DENIED AS MOOT** in view of the Court's earlier denial of Defendant's Motion for Leave to Supplement the Expert Reports of Stephen Gray, David Peterson, and Julie Davis (Dkt. No. 235). (Dkt No. 334 at 145:21–24.)

15. **Defendant's Motion for Summary Judgment of No Inequitable Conduct (Dkt. No. 306, -319 case)**

The motion was **DENIED**. (Dkt. No. 334 at 145:25–157:9.) The Court found that outstanding questions of material fact precluded the entry of summary judgment on this issue. The Court will take up any arguments on underlying inequitable conduct issues at a bench trial after the jury trial in the above-captioned case.

16. **Defendant's Motion to Exclude Opinions of USAA Expert Stephen Mott (Dkt. No. 103)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 334 at 157:10–175:7.) The motion was **GRANTED** as to paragraphs 150–187 in which Mr. Mott opines that there was copying based on the jury's finding of willful infringement in the *Wells Fargo* case. The Court found that this opinion was not reliable. The balance of the motion was **DENIED**.

17. **Plaintiff's *Daubert* Motion to Strike Portions of the Rebuttal Expert Report of Mark Webster (Dkt. No. 107)**

The motion was **WITHDRAWN**. (Dkt. No. 334 at 175:16–176:14.)

18. **Defendant's Motion to Exclude Opinions of USAA Damages Expert David Kennedy (Dkt. No. 118)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 334 at 176:15–204:12.) The Court **GRANTED** the motion as to the discussion of the *Wells Fargo* verdict in paragraphs 109, 279, 308, and 309, which were stricken. The Court found that discussion of the settlement agreement and the license that flowed from the *Wells Fargo* verdict are permissible at trial but the verdicts and further discussion of the underlying findings by the juries in reaching those verdicts are improper. The balance of the motion was **DENIED**.

19. **USAA's *Daubert* Motion to Strike Portions of the Rebuttal Expert Report of Christopher Vellturo (Dkt. No. 114)**

The motion was **DENIED**. (Dkt. No. 334 at 204:13–207:4.)

20.     **Plaintiff's Motion to Strike Expert Report of Julie Davis (Dkt. No. 108)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 334 at 207:14–234:4.) The motion was **DENIED** as to the discussion of prosecution history. The Court clarified that Ms. Davis's testimony is limited to what she expressly adopts from the Peterson report. The motion was **GRANTED** as to the discussion of Garcia-Verdugo as a non-infringing alternative given PNC's withdrawal of the paragraph on the record. The motion was **GRANTED** as to the discussion of invalidity as part of damages. The Court found that this was an invalidity opinion in disguise being proffered by a damages expert. The motion was **GRANTED** as to the discussion of entitlement to the value of the patents-in-suit. The Court found that this was an invalidity opinion being improperly proffered by a damages expert. The motion was **DENIED** as to the discussion of Mitek's place in the 2008 market. The Court clarified that Ms. Davis may not opine on Mitek beyond background information. The motion was **GRANTED** as to the discussion of non-prior art systems, including BankInter, Mitek, and West Virginia Federal Credit Union. The motion was **GRANTED** as to the discussion of enablement. The Court found that this was an invalidity opinion in disguise being proffered by a damages expert. The motion was **DENIED** as to Ms. Davis's purported "parroting" of Dr. Vellturo's citation analysis. The motion was **DENIED** as to the discussion of USAA's licensing practices. The Court clarified that the parties will not be permitted to denigrate each other or their counsel before the jury. The motion was **GRANTED** as to the discussion of regulatory actions and/or consent decrees. The Court struck any reference to the monetary value of the civil money penalty as overly prejudicial. However, the Court will permit reference to the fact that a civil money penalty was imposed. The Court instructed the parties to approach the bench and obtain leave before any testimony is elicited from Ms. Davis on this topic. The motion was **GRANTED** as to citations to expert reports from the -319 case not presented at trial. The Court found that it is not Ms. Davis's job to impeach other witnesses using expert reports

not presented at the trial in the -319 case. The motion was **DENIED** as to suggestions about USAA seeking royalties in -319 case. The Court found that it is not Ms. Davis's job to impeach other witnesses. The motion was **DENIED** as to the discussion of unconsummated and other non-comparable agreements. The Court found that the licensing letters did not appear to be in dispute. The Court also ordered redactions to the dollar amounts of the SunCoast, NCR, and DollarBank agreements and accompanying correspondence. The motion was **DENIED** as to the discussion of alleged "double counting." As to non-infringing alternatives, the motion was **GRANTED** as to the portions of the discussion that rely on the Webster report, but the motion was **DENIED** as to the portions of the discussion that rely on the Peterson report. The motion was **DENIED** as to the discussion of fingerprint authentication. The motion was **GRANTED** as to the discussion of Deposit@Mobile as a Top Negative Mover. The Court found that this was an invalidity opinion in disguise being proffered by a damages expert.

21. **Plaintiff's Motion to Strike Supplemental Expert Report of Julie Davis (Dkt. No. 109)**

The motion was **DENIED AS MOOT** in view of the Court's earlier denial of Defendant's Motion for Leave to Supplement the Expert Reports of Stephen Gray, David Peterson, and Julie Davis (Dkt. No. 235). (Dkt No. 334 at 234:5–8.)

22. **Plaintiff's *Daubert* Motion to Strike Portions of the Opening Expert Report of Christopher Vellturo (Dkt. No. 315, -319 case)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 335 at 4:2–9:22.) The motion was **GRANTED** pursuant to agreement by the parties relating to paragraphs 8, 15–22, 28–32, 34–44, 52, 57–63, 70, 76, 80, 83, and 91. These paragraphs referenced the opinions of withdrawn expert Dr. Webster and/or a patent that has been dropped from the case. The balance of the motion was **DENIED**. The Court found that the topics in Dr. Vellturo's report, including his opinions on design-around cost analysis, are best addressed via robust

cross-examination. The Court clarified that no expert witness will be permitted to opine on the law.

23.     **Plaintiff's Motion to Strike Expert Report of David Peterson (Dkt. No. 112)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Dkt. No. 335 at 9:23–41:22.) The motion was **DENIED** as to the discussion of confidentiality designations in paragraph 63. The Court clarified that PNC may refer to the dates of public availability of the patents and could state that the application was confidential until a certain date but could not attribute the confidentiality designation to USAA's request for the same. The motion was **GRANTED-IN-PART** as to the discussion of prior art references without anticipation or obviousness, but only as to the discussion of BankInter, West Virginia Federal Credit Union, and Mitek's ImageNet in paragraphs 94, 96–97, 117, 143, 1532, 1534, 1536–1537 1544, 1546, 1558–1559 and footnote 89, which were stricken. The Court will act as a gatekeeper as to any discussions of DepositNow and Goldleaf in paragraphs 70, 76, 82, 84, 102, and 125, and footnotes 80 and 459. The portion of the motion regarding the balance of the discussion of prior art references without anticipation or obviousness was **DENIED**. The motion was **GRANTED** as to the discussion of the patent examiner's state of mind in paragraphs 60–61. The Court found this to be a clear attempt by the expert to opine on the mental processes of the examiner. The motion was **DENIED** as to the discussion of commercial development as evidence of non-enablement in paragraphs 149–179. The motion was **GRANTED** as to the discussion of litigation with Mitek in paragraph 1535. The Court found that under Federal Rule of Evidence 403, such evidence is much more prejudicial than probative and is also likely to confuse the jury. The Court clarified that there shall be no discussion of prior litigations, by either party, without prior leave of Court. The motion was **DENIED** as to the reliance on VECTOR documents in paragraphs 341–374 and 1535 and in footnotes 154 and 345. The Court found that the VECTOR documents were best addressed via

robust cross-examination. The motion was **GRANTED** as to the discussion of unasserted prior art, including Shell, Halpin, Kryka, and SourceNDP, in paragraphs 99, 125, 356, 395, 789–790, and 842–843, and footnotes 58, 107, and 371. The motion was **GRANTED-IN-PART** and **DENIED-IN-PART** as to the discussion of MRDC commercial launches in paragraph 181. The fact that the asserted claims were continuation claims is permitted, but to allege that those continuation claims are relevant to copying and written description is overly prejudicial. Accordingly, any discussion beyond the fact that the continuation claims were made at a time subsequent to the original application is excluded. The motion was **DENIED** as to the discussion of industry praise in paragraphs 1534 and 1536–1537. The Court clarified that if Plaintiff opens the door to a response by Defendant, the Court will address the same if and when it arises. The motion was **DENIED** as to the discussion of the Popadic reference in paragraph 1546. The Court clarified that discussion of the reference is permitted only in relation to evidence of secondary considerations. The motion was **GRANTED-IN-PART** as to the discussion of BankInter in relation to unexpected results in paragraph 1544, but the motion was **DENIED** as to reference to Garcia-Verdugo in the same section. The motion was **DENIED** as to alleged reliance on hearsay in paragraphs 72, 96, 343–344, 346, 427, 442, 814, 823, 1078, 1088, 1093, 1096, 1171, 1174, and 1551–1555.

24.    **Plaintiff's Motion to Strike Supplemental Expert Report of David Peterson (Dkt. No. 113)**

The motion was **DENIED AS MOOT** in view of the Court's earlier denial of Defendant's Motion for Leave to Supplement the Expert Reports of Stephen Gray, David Peterson, and Julie Davis (Dkt. No. 235). (Dkt No. 335 at 42:2–5.)

25.    **Defendant's Motion to Exclude Expert Opinions of Dr. Charles Creusere (Dkt. No. 102)**

The motion was **GRANTED-IN-PART and DENIED-IN-PART**. (Dkt. No. 335 at

42:6–50:12.) The motion was **DENIED** as to reliance on the opinions of Mr. Mott, but *only* if Mr. Mott testifies in advance of Dr. Creusere. If Mr. Mott does not testify, the sections of Dr. Creusere's report that depend on Mr. Mott are stricken. The motion was **DENIED** as to use of quotes and summaries. The Court found that such is properly addressed via robust cross-examination. The motion was **DENIED** as to the discussion of nexus. The Court found that it is within the purview of the jury to determine whether a nexus was or was not proven. The motion was **GRANTED** as to the discussion of the *Wells Fargo* willfulness finding as evidence of copying. The balance of the copying section of the motion was **DENIED**. The Court found that appropriate circumstantial evidence exists to support this opinion. The motion was **DENIED** as to the discussion of the Pintsov reference.

26. **Plaintiff's Motion to Strike Rebuttal Expert Report of David Peterson (Dkt. No. 309, -319 case)**

The motion was **DENIED**. (Dkt. No. 335 at 50:13–58:17.) The Court clarified that the discussion of patent prosecution in paragraphs 42–43 and the discussion of materiality in paragraphs 937–976 relate solely to the bench trial on inequitable conduct and will not be presented to the jury. The motion was **DENIED** as to the discussion of secondary considerations. The Court found that this is best addressed by robust cross-examination.

27. **Defendant's Motion to Limit the Number of Asserted Claims (Dkt. No. 281)**

The motion was **CARRIED**. (Dkt. No. 335 at 58:18–22.) The parties were directed to file a joint notice with the Court by 5:00 pm central time on Friday August 19, 2022 detailing the parties' narrowed asserted claims.

28. **Plaintiff's Motion to Strike Carlos Olsson from PNC Witness List (Dkt. No. 293)**

The motion was **DENIED AS MOOT** given PNC's affirmative representation that Mr. Olsson will not be present at trial. (Dkt. No. 335 at 58:23–59:8.)

29.    **Plaintiff's Motion to Strike Expert Reports of Stephen Gray (Dkt. No. 313, -319 case)**

The motion was **DENIED AS MOOT** given PNC's affirmative representation that the claims on which Mr. Gray opined have been dropped from the case. (Dkt. No. 335 at 59:9–60:5.)

## MOTIONS *IN LIMINE*

It is **ORDERED** that the Parties, their witnesses, and counsel shall not raise, discuss, or argue the following before the venire panel or the jury without prior leave of the Court:

### I.    PLAINTIFF'S OPPOSED MOTIONS *IN LIMINE* (Dkt. No. 225)

Plaintiff's MIL 1    **Preclude evidence or argument regarding PNC's state of mind on questions of infringement, validity, or willfulness.**

The MIL was **DENIED**. (Dkt. No. 335 at 63:10–68:5.) The Court found that willfulness is based upon a totality of the circumstances analysis and evidence of the parties' state of mind and mental processes is permitted. The Court also noted that discovery disputes are not to be raised before the jury without prior leave of Court.

Plaintiff's MIL 2    **Preclude suggestion that either USAA or PNC's MRDC system relies on any third-party patent and preclude reference to specific third-party patents entirely unless part of an invalidity argument.**

The MIL was **DENIED**. (Dkt. No. 335 at 68:6–71:20.) The Court found that this topic is better addressed in the context of specific exhibit disputes.

Plaintiff's MIL 3    **Preclude argument or evidence suggesting that USAA copied PNC or any other entity when developing its products asserted of infringement in PNC's counterclaims.**

The MIL was **DENIED**. (Dkt. No. 335 at 71:21–77:3.)

Plaintiff's MIL 4    **Preclude reference to the "Fuld" document found in USAA's records without leave of Court.**

The MIL was **CARRIED**. (Dkt. No. 335 at 77:4–79:19.)

Plaintiff's MIL 5    **Preclude argument or testimony related to any alleged USAA failure to preserve documents.**

The MIL was **GRANTED**. (Dkt. No. 335 at 79:21–80:14.)

Plaintiff's MIL 6        **Preclude evidence or argument related to USAA's licensing communications with third party banks that did not result in licenses, other than SunCoast and Dollar, referenced in MIL No. 7.**

The MIL was **GRANTED-IN-PART**. (Dkt. No. 335 at 80:16–82:23.) The parties may not reference the amount or non-acceptance of the license offers. However, the existence of licensing communications and the general structure of the licenses or offers are admissible.

Plaintiff's MIL 7        **Preclude evidence and argument regarding negotiations between USAA and Dollar and SunCoast.**

The MIL was **GRANTED-IN-PART**. (Dkt. No. 335 at 80:16–83:22.) The parties may not reference the amount or outcome of the negotiations with Dollar and SunCoast. However, the existence of licensing communications and the structure of the licenses or offers are admissible.

Plaintiff's MIL 8        **Preclude argument that any third-party entity (including NCR and Mitek) is liable for PNC's infringement and/or indemnifying PNC.**

The MIL was **GRANTED**. (Dkt. No. 335 at 83:24–86:14.) The Court found that the injection of indemnification into the trial would be overly prejudicial.

Plaintiff's MIL 9        **Preclude testimony and evidence regarding consent decrees and regulatory inquiries involving USAA.**

The MIL was **GRANTED**. (Dkt. No. 335 at 86:16–87:25.) The Court will act as a gatekeeper on this topic.

Plaintiff's MIL 10        **Preclude PNC from examining any fact witness on the West Virginia Credit Union ("WVCU") or Movilcheck systems.**

The MIL was **GRANTED**. (Dkt. No. 335 at 88:2–89:21.) The Court will act as a gatekeeper on this topic.

Plaintiff's MIL 11        **Preclude PNC from disputing that the PTO allowed the '598, '638, and '136 patents to claim a priority date of October 31, 2006.**

The MIL was **WITHDRAWN**. (Dkt. No. 335 at 89:22–90:4.)

Plaintiff's MIL 12 **Preclude PNC fact witnesses from testifying about the presence or absence of any USAA claim limitation in PNC's products.**

The MIL was **WITHDRAWN**. (Dkt. No. 335 at 90:5–92:5.) The Court clarified that fact witnesses are limited to their personal knowledge and are not permitted to give opinion testimony.

Plaintiff's MIL 13 **Preclude reference to any PTAB proceedings filed by PNC against USAA's patents.**

The MIL was **GRANTED**. (Dkt. No. 335 at 92:8–93:4.) The MIL will apply mutually to both parties. The parties are not to opine on the Patent Trial and Appeal Board, *inter partes* review, the Smith-Leahy America Invents Act, or any alternative structure that does not relate directly to an Article III trial in a district court.

Plaintiff's MIL 14 **Preclude argument or evidence that USAA filed for patent claims in the continuation applications that led to the patents in suit based on what the industry was doing.**

The MIL was **GRANTED-IN-PART**. (Dkt. No. 335 at 93:5–95:4.) The Court **GRANTED** the MIL only to the extent that Defendant may not argue directly or indirectly that continuation claims were pursued to copy the industry.

Plaintiff's MIL 15 **Preclude argument or evidence regarding the non-publication designation on USAA's applications.**

The MIL was **GRANTED**. (Dkt. No. 335 at 95:6–96:2.) The Court clarified that this MIL is coextensive with the Court's earlier ruling on the Peterson report (Dkt. No. 112). (*See* Dkt. No. 335 at 9:23–41:22.)

Plaintiff's MIL 16 **Preclude PNC from arguing that the substance of any prior art or evidence it asserts was not before the PTO.**

The MIL was **DENIED**. (Dkt. No. 335 at 96:3–98:2.)

Plaintiff's MIL 17 **Preclude argument, evidence, or suggestion that it was improper for USAA to file continuation applications after inventors left the company or without their participation.**

The MIL was **GRANTED**. (Dkt. No. 335 at 98:4–99:16.) The Court will act as a

gatekeeper on this topic. The Court clarified that Defendant should not indicate that the continuation process is improper. If Defendant contends that any mention of the continuation process is relevant to some other issue at trial, Defendant must seek prior leave of Court.

| Plaintiff's MIL 18 | **Exclude all PNC vendor agreements, contracts, and licenses except those that PNC's experts discuss as comparable.** |
|---|---|

The MIL was **CARRIED**. (Dkt. No. 335 at 101:14–102:17.)

| Plaintiff's MIL 19 | **Preclude PNC from introducing at trial any §§ 102 or 103 prior art references not used in grounds by Mr. Peterson or its other expert reports.** |
|---|---|

The MIL was **CARRIED**. (Dkt. No. 335 at 102:19–103:14.)

| Plaintiff's MIL 20 | **Preclude testimony from Dr. Vellturo that he used a patent citation analysis in another case where he served as an expert for a client of Irell and Manella.** |
|---|---|

The MIL was **GRANTED**. (Dkt. No. 335 at 103:16–104:20.) The Court will act as a gatekeeper on this topic. Defendant may seek leave of the Court if it believes Plaintiff has opened the door to this evidence.

| Plaintiff's MIL 21 | **Preclude testimony and evidence that PNC practiced the '788 or '786 patents in any commercial product and that it practiced the patents for any specified period of time (or continues to do so).** |
|---|---|

The MIL was **DENIED**. (Dkt. No. 335 at 104:21–1076.) The Court clarified that fact witnesses are limited to their personal knowledge and are not permitted to give opinion testimony.

| Plaintiff's MIL 22 | **Preclude evidence or argument comparing USAA's mobile deposit app to PNC's mobile deposit app for purposes of non-infringement.** |
|---|---|

The MIL was **GRANTED**. (Dkt. No. 335 at 107:7–109:3.) This MIL will be applied mutually. The Court clarified that neither party is permitted to compare their products with the products of the other party for purposes of infringement.

## II.      DEFENDANT'S OPPOSED MOTIONS *IN LIMINE* (Dkt. No. 224)

Defendant's MIL 1      **Preclude any reference to *Wells Fargo* litigation or settlement.**

The MIL was **GRANTED**. (Dkt. No. 335 at 109:6–116:7.) The Court clarified that discussion of the *Wells Fargo* verdict is excluded but that discussion of the resulting settlement and license agreement are permitted with prior leave of the Court. The Court ordered that to go into the *Wells Fargo* litigation in any way requires prior leave of court. The Court will act as gatekeeper on this topic.

Defendant's MIL 2      **Preclude evidence or argument that PNC copied, stole, took, or monitored USAA's technology.**

The MIL was **DENIED**. (Dkt. No. 335 at 116:8–121:18.)

Defendant's MIL 3      **Preclude evidence or argument inconsistent with FRE 407 (remedial measures).**

The MIL was **DENIED**. (Dkt. No. 335 at 121:19–126:19.) The Court found that it is inappropriate to order *in limine* that the parties either comply or avoid non-compliance with the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

Defendant's MIL 4      **Preclude evidence or argument barred by FRE 408.**

The MIL was **CARRIED**. (Dkt. No. 335 at 126:22–132:2.) This will rise or fall on admission of underlying letters as exhibits. The Court clarified that to the extent the letters underlying this MIL are not pre-admitted, then the MIL will be **GRANTED** and the parties will be precluded from mentioning the same to the jury.

Defendant's MIL 5      **Preclude reference to change in PNC lead counsel or experts.**

The MIL was **GRANTED**. (Dkt. No. 335 at 132:3–138:8.) The Court precluded reference to changes of expert witness or counsel between the -319 case and this case.

Defendant's MIL 6      **Preclude reference to irrelevant, prejudicial, large financial numbers such as amount on deposit and/or volume of checks deposited at PNC.**

The MIL was **DENIED**. (Dkt. No. 335 at 138:9–144:16.) The Court noted that the experts

are limited to their reports, and their reports are tested via *Daubert*, not *limine* practice.

<u>Defendant's MIL 7</u>    **Preclude reference to non-comparable *Wells Fargo*, Zelle, and ATM Agreements.**

The MIL was **DENIED**. (Dkt. No. 335 at 144:17–145:14.)

<u>Defendant's MIL 8</u>    **Preclude reference to deaths of USAA employees, former employees, or family members.**

The MIL was **GRANTED-IN-PART and DENIED-IN-PART**. (Dkt. No. 335 at 145:16–148:25.) The MIL was **GRANTED-IN-PART** with regard to Mr. Oakes. A witness with personal knowledge may testify that Mr. Oakes is deceased and, if they were at his memorial service, they may testify that Mr. Oakes' inventions were mentioned among his accomplishments. The Court clarified that there shall be no photographs displayed to the jury from Mr. Oakes' funeral or memorial service. The MIL was **DENIED** as to Mr. Prasad.

<u>Defendant's MIL 9</u>    **Preclude evidence or argument regarding equitable defenses.**

The MIL was **GRANTED AS AGREED**. (Dkt. No. 335 at 60:21–62:9; 149:1–14.) Plaintiff represented that it would provide Defendants with notice not less than 24-hours' before it proceeds with an improper inventorship defense.

<u>Defendant's MIL 10</u>    **Preclude evidence or argument regarding pretrial proceedings or issues not presented at trial.**

The MIL was **GRANTED**. (Dkt. No. 335 at 149:15–157:22.) To the extent any party seeks to introduce infringement contentions before the jury, the offering party must first seek leave from the Court. The Court also clarified that the ruling on the MIL is further constrained by the Court's prior rulings on other pretrial motions.

<u>Defendant's MIL 11</u>    **Preclude evidence not timely produced in discovery.**

The MIL was **CARRIED**. (Dkt. No. 335 at 157:23–158:20.)

Defendant's MIL 12   **Preclude any suggestion that PNC infringed during periods where no damages are sought.**

The MIL was **DENIED**. (Dkt. No. 335 at 158:21–164:21.)

Defendant's MIL 13   **Preclude evidence or argument concerning PNC's financial size, wealth, or executive compensation.**

The MIL was **GRANTED-IN-PART and DENIED-IN-PART**. (Dkt. No. 335 at 163:22–167:6.) The MIL was **GRANTED** mutually as to specific amounts of PNC or USAA's revenue, its wealth, and its standing in the marketplace. The MIL was **DENIED** as to questions of compensation or stock ownership of any USAA or PNC employees, which may be relevant to bias. As to comparisons between the size of PNC and Bremer in Mr. Kennedy's damages report, the parties are to seek leave of Court before eliciting testimony regarding the same.

Defendant's MIL 14   **Preclude any suggestion that PNC's express funds or other products are usurious, predatory, or similar to "pay day" loans.**

The MIL was **GRANTED AS AGREED**. (Dkt. No. 335 at 62:10–63:4; 167:8–13.) This ruling does not preclude reference to any relevant underlying calculations in Mr. Kennedy's report.

Defendant's MIL 15   **Preclude any suggestion that PNC knew about the asserted patents before they issued.**

The MIL was **DENIED**. (Dkt. No. 335 at 167:15–171:7.) The Court finds that the subject matter of this MIL is relevant to willfulness.

Defendant's MIL 16   **Preclude any evidence or argument that USAA's mobile app practices USAA's patent claims except where supported by expert opinion.**

The MIL was **DENIED**. (Dkt. No. 335 at 171:8–173:21.) The Court clarified that fact witnesses are limited to their personal knowledge and are not permitted to give opinion testimony.

Defendant's MIL 17   **Preclude any testimony by fact witnesses that patent claims are or are not practiced.**

The MIL was **GRANTED**. (Dkt. No. 335 at 174:5–178:19.) The Court clarified that fact witnesses are limited to their personal knowledge and are not permitted to give opinion testimony.

The Court will not permit Mr. Wilkinson to testify that he examined the patents and has concluded that USAA does not infringe the PNC patents. However, this ruling does not prohibit Mr. Wilkinson from testifying as to his personal knowledge of how the products work. Further, the Court clarified that Mr. Wilkinson can speak for USAA and testify to USAA's position that it does not infringe the asserted patents of PNC, but Mr. Wilkinson may not testify as to any personal opinion of non-infringement based on his own examination.

<u>Defendant's MIL 18</u>   **Preclude any modification or fabrication of documents in demonstratives.**

The MIL was **DENIED**. (Dkt. No. 335 at 178:22–183:7.) The Court clarified that the parties are not to materially modify or misrepresent any matter that a demonstrative is purported to represent. The Court will act as a gatekeeper on demonstratives during morning disputes.

<u>Defendant's MIL 19</u>   **Preclude any suggestion that PNC infringed prior to issuance of the asserted patents.**

The MIL was **GRANTED**. (Dkt. No. 335 at 183:9–185:20.) There is to be no suggestion that PNC infringed the patents before the date of issuance. This does not preclude USAA from relying on pre-issuance facts and evidence to argue willfulness. The Court applied the MIL mutually.

<u>Defendant's MIL 20</u>   **Preclude any evidence or argument that there was no "PNC effort to avoid infringement" prior to the notice of alleged infringement.**

The MIL was **DENIED**. (Dkt. No. 335 at 185:21–189:21.) The Court clarified that opening statements in the case shall be non-argumentative.

<u>Defendant's MIL 21</u>   **Preclude any evidence or argument disparaging prior art for originating from another country.**

The MIL was **GRANTED**. (Dkt. No. 335 at 189:23–191:23.) The Court clarified that this MIL does not prevent any party or witness from discussing prior art on a factual basis, including where it comes from and how it was developed.

<u>Defendant's MIL 22</u>   **Preclude any evidence or argument disparaging prior art publications because they were abandoned.**

The MIL was **GRANTED-IN-PART and DENIED-IN-PART**. (Dkt. No. 335 at 191:19–196:7.) The Court **GRANTED** the MIL as to the reason and rationale behind the abandonment. The Court **DENIED** the MIL as to the fact that the application was abandoned.

## III.   COURT MILS

The Court further required that both parties must obtain leave of the Court before mentioning the -319 case in the presence of the jury. (Dkt. No. 334 at 16:13–17:20.) The Court also required that discovery disputes are not to be raised before the jury without prior leave of Court. The Court will act as a gatekeeper on such issues. (*See* Dkt. No. 335 at 63:10–68:5.)

**So ORDERED and SIGNED this 31st day of August, 2022.**


RODNEY   GILSTRAP
UNITED STATES DISTRICT JUDGE